# CASES DECIDED

IN THE

# COURT OF APPEALS

OF THE

# STATE OF NEW YORK.

THOMAS and wife *v.* WINCHESTER.

*Responsibility for negligence.*

A principal is responsible for the negligent act of his agent, in the course of his business, whereby a third person is injured.

A dealer in drugs and medicines, who carelessly labels a deadly poison as a harmless medicine, and sends it, so labelled, into the market, is liable to any person, who, without fault on his part, is injured thereby ; though it may have passed through other hands, by intermediate sales, before it reached the person injured.

APPEAL from the general term of the Supreme Court, in the sixth district, where a motion for a new trial, made upon a bill of exceptions, had been denied, and judgment entered upon a verdict in favor of the plaintiffs.

This action was brought by Samuel Thomas and Mary Ann, his wife, against the defendants, Winchester and Gilbert, to recover damages for negligently putting up, labelling and selling, as and for extract of dandelion, a simple and harmless medicine, a jar of extract of

381

belladonna, a deadly poison; by means whereof, the plaintiff, Mary Ann Thomas, to whom a dose of dandelion had been prescribed by a physician, and to whom a portion of the contents of the jar of belladonna had been administered, as and for extract of dandelion, had been greatly injured.

\*398 ] *The complaint alleged, that the defendants, from the year 1843, to the 1st January 1849, were engaged in putting up and vending certain vegetable extracts, at a store in the city of New York, designated as "108 John street," and that the defendant, Gilbert, had, for a long time previously thereto, been so engaged, at the same place. That among the extracts so prepared and sold by them, were those respectively known as the "extract of dandelion," and the "extract of belladonna;" the former a mild and harmless medicine, and the latter a vegetable poison, which, if taken as a medicine in such quantity as might be safely administered of the former, would destroy the life, or seriously impair the health, of the person to whom the same might be administered. That, at some time between the periods above mentioned, the defendants put up and sold to James S. Aspinwall, a druggist in the city of New York, a jar of the extract of belladonna, which had been labelled by them as the extract of dandelion, and was purchased of them as such, by Aspinwall. That Aspinwall afterwards, on the 10th May 1845, relying upon the label so affixed by the defendants, sold the said jar of belladonna to Alvin Foord, a druggist of Cazenovia, in the county of Madison, as the extract of dandelion. That afterwards, on the 27th March 1849, the plaintiff, Mrs. Thomas, being sick, a portion of the extract of dandelion was prescribed for her, by her physician, and the said Alvin Foord, relying upon the label affixed by the defendants to said jar of belladonna, and believing the same to be the extract of dandelion, did, on the application of the plain-

tiff, Samuel Thomas, sell and deliver to him, from the
said jar of belladonna, a portion of its contents, which
was administered to the plaintiff, Mrs. Thomas, under
the belief that it was the extract of dandelion; by which
she was greatly injured, so that her life was despaired
of, &c.   The plaintiffs also averred that the whole injury
was occasioned by the negligence and unskilfulness of
the defendants in putting up and falsely labelling the
jar of belladonna as the extract of dandelion, whereby
the plaintiffs, as well as the druggists, and all other per-
sons through whose hands it passed, before being
*administered as aforesaid, were induced to be-  [ * 399
lieve, and did believe, that it contained the ex-
tract of dandelion.

The defendants, in their answers, severally denied the
allegations of the complaint, and insisted that they were
not liable for the medicines sold by Aspinwall and Foord.

*It was proved, on the trial, before MASON, J.,  [ * 405
that Mrs. Thomas being in ill health, her physi-
cian prescribed for her a dose of dandelion.   Her hus-
band purchased what was believed to be the medicine
prescribed, at the store of Dr. Foord, a physician and
druggist in Cazenovia, Madison county, where the plain-
tiffs resided.   A small quantity of the medicine thus
purchased was administered to Mrs. Thomas, on whom
it produced very alarming effects; such as coldness of
the surface and extremities, feebleness of circulation,
spasms of the muscles, giddiness of the head, dilation of
the pupils of the eyes, and derangement of mind.   She
recovered, however, after some time, from its effects,
although, for a short time, her life was thought to be in
great danger.

The medicine administered was *belladonna, and not
dandelion.*   The jar from which it was taken was labelled
" ½ lb. *dandelion, prepared by A. Gilbert, No.* 108 *John street,
N. Y.   Jar* 8 *oz.*"   It was sold for, and believed by Dr.
Foord to be, the extract of dandelion, as labelled.

Dr. Foord purchased the article, as the extract of dandelion, from James S. Aspinwall, a druggist at New York. Aspinwall bought it of the defendant, as extract of dandelion, believing it to be such.

The defendant, Winchester, was engaged at No. 108 John street, New York, in the manufacture and sale of certain vegetable extracts for medicinal purposes, and in the *purchase and sale of others. The extracts *406 ] manufactured by him were put up in jars for sale, and those which he purchased were put up by him in like manner. The jars containing extracts manufactured by himself and those containing extracts purchased by him from others, were labelled alike. Both were labelled like the jar in question, as "prepared by A. Gilbert." Gilbert was a person employed by the defendant at a salary, as an assistant in his business. The jars were labelled in Gilbert's name, because he had been previously engaged in the same business, on his own account, at No. 108 John street, and, probably, because Gilbert's labels rendered the articles more saleable.

The extract contained in the jar sold to Aspinwall, and by him to Foord, was not manufactured by the defendant, but was purchased by him from another manufacturer or dealer. The extract of dandelion and the extract of belladonna resemble each other in color, consistence, smell and taste ; but may, on careful examination, be distinguished the one from the other by those who are well acquainted with these articles. Gilbert's labels were paid for by Winchester, and used in his business, with his knowledge and assent.

At the close of the testimony, the defendants' counsel moved for a nonsuit, on the following grounds:

1. That the action could not be sustained, as the defendant was the remote vendor of the article in question ; and there was no connection, transaction or privity between him and the plaintiffs, or either of them.

2. That this action sought to charge the defendant with the consequences of the negligence of Aspinwall and Foord.

3. That the plaintiffs were liable to, and chargeable with the negligence of Aspinwall and Foord, and, therefore, could not maintain this action.

4. That, according to the testimony, Foord was chargeable with negligence, and that the plaintiffs, therefore, could not sustain this suit against the defendants; if they could sustain a suit at all, it would be against Foord only.

5. That this suit being brought for the benefit of the wife, *and alleging her as the meritorious cause of action, cannot be sustained. [ *407

6. That there was not sufficient evidence of negligence in the defendants to go to the jury.

The learned judge overruled the motion for a non-suit, and the defendants' counsel excepted.

The judge, among other things, charged the jury, that if they should find, from the evidence, that either Aspinwall or Foord were guilty of negligence in vending, as and for dandelion, the extract taken by Mrs. Thomas, or that the plaintiff, Thomas, or those who administered it to Mrs. Thomas, were chargeable with negligence in administering it, the plaintiffs were not entitled to recover; but if they were free from negligence, and if the defendant, Winchester, was guilty of negligence in putting up and vending the extracts in question, the plaintiffs were entitled to recover, provided the extract administered to Mrs. Thomas was the same which was put up by the defendant, and sold by him to Aspinwall, and by Aspinwall to Foord. That if they should find the defendant liable, the plaintiffs were entitled to recover damages only for the personal injury and suffering of the wife, and not for loss of service, medical treatment or expense to the husband, and that the recovery should be confined to the actual damages suffered by the wife

The defendant, Gilbert, was acquitted by the jury, and a verdict was rendered against Winchester for $800 damages; and a motion for a new trial, made at general term, upon a bill of exceptions, having been denied, and judgment perfected on the verdict, the defendant, Winchester, took this appeal.

*Kirkland*, for the appellant.

*Hill*, for the respondents.

RUGGLES, C. J. (after stating the facts.)—The action was properly brought in the name of the husband and wife, for the personal injury and suffering of the wife; and the case was left to the jury, with the proper directions on that point. (1 Chit. Plead. 62.)

The case depends on the first point taken by the defendant, on his motion for a nonsuit; and the question is, whether the defendant, being a remote vendor of the medicine, and there being no privity or connection between him and the plaintiffs, the action can be maintained. If, in labelling a poisonous drug with the name of a harmless medicine, for public market, no duty was violated by the defendant, excepting that which he owed to Aspinwall, his immediate vendee, in virtue of his contract of sale, this action cannot *be maintained.

*408 ]

If A. build a wagon and sell it to B., who sells it to C., and C. hires it to D., who in consequence of the gross negligence of A., in building the wagon, is overturned and injured, D. cannot recover damages against A., the builder. A.'s obligation to build the wagon faithfully, arises solely out of his contract with B.; the public have nothing to do with it. Misfortune to third persons, not parties to the contract, would not be a natural and necessary consequence of the builder's negligence; and

such negligence is not an act imminently dangerous to human life. So, for the same reason, if a horse be defectively shod by a smith, and a person hiring the horse from the owner, is thrown and injured, in consequence of the smith's negligence in shoeing; the smith is not liable for the injury. The smith's duty in such case grows exclusively out of his contract with the owner of the horse; it was a duty which the smith owed to him alone, and to no one else. And although the injury to the rider may have happened, in consequence of the negligence of the smith, the latter was not bound, either by his contract, or by any considerations of public policy or safety, to respond for his breach of duty to any one except the person he contracted with.

This was the ground on which the case of *Winter-bottom* v. *Wright* (10 Mees. & Welsb. 109) was decided. A. contracted with the postmaster-general to provide a coach to convey the mail-bags along a certain line of road, and B. and others also contracted to horse the coach along the same line. B. and his co-contractors hired C., who was the plaintiff, to drive the coach. The coach, in consequence of some latent defect, broke down; the plaintiff was thrown from his seat and lamed. It was held, that C. could not maintain an action against A., for the injury thus sustained. The reason of the decision is best stated by Baron ROLFE: A.'s duty to keep the coach in good condition, was a duty to the postmaster-general, with whom he made his contract, and not a duty to the driver employed by the owners of the horses.

But the case in hand stands on a different ground. The defendant *was a dealer in poisonous drugs; Gilbert was his agent in preparing them for [ * 409 market. The death or great bodily harm of some person, was the natural, and almost inevitable, consequence of the sale of belladonna by means of the false label. Gilbert, the defendant's agent, would have been punish-

able for manslaughter, if Mrs. Thomas had died, in con-sequence of taking the falsely-labelled medicine. Every man who, by his culpable negligence, causes the death of another, although without intent to kill, is guilty of manslaughter. (2 R. S. 672, § 19.) A chemist, who negligently sells laudanum in a phial labelled as par-egoric, and thereby causes the death of a person to whom it is administered, is guilty of manslaughter. (*Tessy-mond's Case,* 1 Lewin's Crown Cases 169.) "So highly does the law value human life, that it admits of no jus-tification, wherever life has been lost, and the careless-ness or negligence of one person has contributed to the death of another. (*Regina* v. *Swindall,* 2 Car. & Kir. 232–3.) And this rule applies not only where the death of one is occasioned by the negligent act of another, but where it is caused by the negligent omission of a duty of that other. (2 Car. & Kir. 367, 371.) Although the defendant, Winchester, may not be answerable crim-inally for the negligence of his agent, there can be no doubt of his liability, in a civil action, in which the act of the agent is to be regarded as the act of the principal.[1]

In respect to the wrongful and criminal character of the negligence complained of, this case differs widely from those put by the defendant's counsel; no such im-minent danger existed in those cases. In the present case, the sale of the poisonous article was made to a dealer in drugs, and not to a consumer; the injury, therefore, was not likely to fall on him, or on his vendee, who was also a dealer; but much more likely to be visited on a remote purchaser, as actually happened. The defendant's negligence put human life in imminent danger. Can it be said, that there was no duty on the

[1] In Ryall *v.* Kennedy, 67 N. Y. 379, s. c. 8 J. & Sp. 347, the master of a vessel was held liable for the negligence of the steward, in permitting a poisonous substance, with which the ship had been fumigated, to remain in the drinking cups of the passengers, whereby the plaintiff's infant child was poisoned and died.

part of the defendant, to avoid the creation of that danger, by the exercise of greater caution? or that the exercise of that caution was a duty only to his immediate *vendee, whose life was not endangered? The defendant's duty arose out of the nature of [ * 410 his business, and the danger to others incident to its mismanagement. Nothing but mischief like that which actually happened could have been expected, from sending the poison falsely labelled into the market; and the defendant is justly responsible for the probable consequences of the act. The duty of exercising caution in this respect did not arise out of the defendant's contract of sale to Aspinwall; the wrong done by the defendant was in putting the poison, mislabelled, into the hands of Aspinwall, as an article of merchandise, to be sold and afterwards used, as the extract of dandelion, by some person then unknown.

The owner of a horse and cart, who leaves them unattended in the street, is liable for any damage which may result from his negligence. (*Lynch* v. *Nurdin*, 1 Ad. & Ellis, N. S., 29; *Illidge* v. *Goodwin*, 5 Car. & Payne 190.) The owner of a loaded gun, who puts it into the hands of a child, by whose indiscretion it is discharged, is liable for the damage occasioned by the discharge. (5 Maule & Sel. 198.) The defendant's contract of sale to Aspinwall does not excuse the wrong done to the plaintiffs; it was a part of the means by which the wrong was effected. The plaintiffs' injury and their remedy would have stood on the same principle, if the defendant had given the belladonna to Dr. Foord, without price, or if he had put it in his shop, without his knowledge, under circumstances which would probably have led to its sale on the faith of the label.

In *Longmeid* v. *Holliday* (6 Exch. 761), the distinction is recognised between an act of negligence imminently dangerous to the lives of others, and one that is not so.

In the former case, the party guilty of the negligence is liable to the party injured, whether there be a contract between them or not; in the latter, the negligent party is liable only to the party with whom he contracted, and on the ground that negligence is a breach of the contract.

The defendant, on the trial, insisted that Aspinwall and Foord were guilty of negligence, in selling the article in question *for what it was represented \*411 ] to be in the label; and that the suit, if it could be sustained at all, should have been brought against Foord. The judge charged the jury that, if they, or either of them, were guilty of negligence in selling the belladona for dandelion, the verdict must be for the defendant; and left the question of their negligence to the jury, who found on that point for the plaintiff. If the case really depended on the point thus raised, the question was properly left to the jury; but I think, it did not. The defendant, by affixing the label to the jar, represented its contents to be dandelion; and to have been "prepared" by his agent Gilbert. The word "prepared" on the label, must be understood to mean that the article was manufactured by him, or that it had passed through some process, under his hands, which would give him personal knowledge of its true name and quality. Whether Foord was justified in selling the article upon the faith of the defendant's label, would have been an open question, in an action by the plaintiffs against him, and I wish to be understood as giving no opinion on that point. But it seems to me, to be clear, that the defendant cannot, in this case, set up as a defence, that Foord sold the contents of the jar, as and for what the defendant represented it to be. The label conveyed the idea distinctly to Foord, that the contents of the jar was the extract of dandelion; and that the defendant knew it to be such; so far as the defendant is

concerned, Foord was under no obligation to test the truth of the representation.   The charge of the judge in submitting to the jury the question in relation to the negligence of Foord and Aspinwall, cannot be complained of by the defendant.

Judgment affirmed.[2]

[2] In Loop *v.* Litchfield, 42 N. Y. 359, it is said, that this case was decided on the ground that the act, in its nature, was one imminently dangerous to the lives of others.  And, accordingly, it was held, in Barney *v.* Burstenbinder, 7 Lans. 210, that the omission of the shipper of a dangerous article, such as nitro-glycerine, to give notice of its nature to the carrier, is an act of negligence, which renders the shipper liable for its consequences.   To the same effect, see Stacy *v.* Wetherill, 7 Haz. Pa. Reg. 92.   And the supreme court of Pennsylvania has recently decided, that a manufacturer of illuminating oils, who negligently puts upon the market, an article which is so volatile as to be unfit for the use for which it is sold, is responsible to an individual who is injured by an explosion thereof; and that the number of hands through which the oil may have passed, before reaching the person injured is no bar to a recovery, if its identity be established.  The court say, that if the manufacturer knew, or, with ordinary care, might have known, the dangerous character of the article sold, he is liable to persons injured by the probable consequences of his act.   McKain *v.* Elkin, 27 Pitts. L. J. 169.   For a former report of this case, see 79 Penn. St. 493.